UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| MARY ANN COLOMB | CIVIL ACTION NO. 07-2171 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| BRETT GRAYSON, ET AL. | MAGISTRATE JUDGE HILL |

MEMORANDUM RULING

Before the Court is a Motion to Dismiss (Record Document 72) filed by two of the defendants, Brett Grayson ("Grayson") and Jerry Stutes ("Stutes"). Grayson and Stutes seek dismissal of the Bivens action asserted against them pursuant to Federal Rule of Civil Procedure12(b)(6). Specifically, they seek dismissal on the grounds of absolute immunity for Grayson and qualified immunity for Stutes. The plaintiff, Mary Ann Colomb ("Colomb"), opposed the Motion to Dismiss. See Record Document 75. For the reasons which follow, the Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**.

**I.    BACKGROUND.**

In April 2004, a federal grand jury returned a second superseding indictment charging Colomb with conspiracy to possess with intent to distribute cocaine base, possession of cocaine base with intent to distribute, establishment of manufacturing operations, and possession of a firearm in furtherance of a drug trafficking crime. See U.S. v. Mary Ann Colomb, et al., United States District Court, Western District of Louisiana (Lafayette), Criminal Action No. 02-60015 (Record Document 531 at 1-2). On March 31, 2006, after a ten day trial, Colomb was found guilty of conspiracy to possess with intent to distribute cocaine base, possession of cocaine base with intent to

distribute, and establishment of manufacturing operations. See id. at 5; Record Document 19, ¶ 4. As a result, Colomb was incarcerated for three and one-half months. See Record Document 19, ¶ 5.

During the trial, the government received a letter from a federal inmate alleging that one of the government's witnesses offered to sell him "some pictures of some people who was going to trail [sic]" for the sum of $2,200. See U.S. v. Mary Ann Colomb, et al., United States District Court, Western District of Louisiana (Lafayette), Criminal Action No. 02-60015 (Record Document 531 at 7). Upon court order, the government disclosed the letter to all defense counsel. See id. (Record Document 531 at 8). Colomb filed a motion for mistrial, arguing that allowing the trial to proceed with the cross-contamination of inmate witness testimony would violate her constitutional rights to a fair trial, adequate assistance of counsel in the cross-examination of witnesses against her, and due process. See id. (Record Document 531 at 8). The motion for mistrial was denied. See id. (Record Document 531 at 8).

On August 31, 2006, Judge Melancon granted Colomb's motion for new trial, which had been filed in April 2006. See id. (Record Document 531). His ruling noted that "the crux of the defenses focused on the unreliability of inmate witness testimony." Id. (Record Document 531 at 6). He further reasoned that the court had erred when it denied Colomb's motion for mistrial and that if the jury had known of the existence of the letter, it is possible that all or some of the defendants would have been acquitted. See id. (Record Document 531 at 11-12). The Government did not retry Colomb and the charges contained in the second superseding indictment against Colomb were dismissed with prejudice. See id. (Record Document 558).

Colomb filed the instant lawsuit on December 16, 2007. See Record Document 1. She amended her complaint on June 20, 2008 and again on October 24, 2008. See Record Documents 19 & 56.

Grayson and Stutes previously filed a Motion to Dismiss (Record Document 24), which this Court granted in part and denied in part. See Record Document 69. Specifically, the motion was granted as to any claims asserted by Colomb pursuant to 42 U.S.C. §§ 1985 and 1986 and the Federal Tort Claims Act. See id. The motion was denied as to Colomb's malicious prosecution claim, or rather the constitutional tort of malicious prosecution, against Stutes. See id.

At the direction of the Court,[1] Colomb filed a Third Amended and Supplemental Complaint on February 17, 2010. See Record Document 84. She contends that the defendants[2] knowingly and intentionally manufactured a false drug case against her and abused the judicial process by falsifying a search warrant to search her home; falsely arresting her; manipulating witnesses; and abusing the grand jury process. See Record Document 84. Specifically, Colomb alleges deprivation of constitutional rights secured

---

[1]On January 19, 2010, the Court ordered, pursuant to Shultea v. Wood, 47 F.3d 1427, 1433-34 (5th Cir. 1995), Plaintiff to submit an amended complaint detailing (1) which specific Constitutional rights were violated and the specific facts which show those violations and (2) whether those rights were clearly established at the time of the alleged misconduct. See Record Document 81. Plaintiff filed her Third Amended and Supplemental Complaint on February 17, 2010. See Record Document 84.

[2]The named defendants include Stutes, a Drug Enforcement Administration Task Force Agent; Acadia Parish Sheriff's Office Narcotics Task Force Detective Brian Hundley; Acadia Parish Sheriff's Office Detective Dale Thibodeaux; Acadia Parish Police Department Detective Troy Hebert; Grayson, an Assistant United States Attorney; Chief of Police K.P. Gibson of the Crowley Police Department; and Sheriff Wayne Melancon of the Acadia Parish Sheriff's Office. See Record Document 84, ¶¶ 3-9.

by the Fourth, Fifth, and Sixth Amendments and malicious prosecution under Louisiana law. See id. Defendants Grayson and Stutes, both federal actors, have raised defenses of absolute immunity and qualified immunity, respectively, to the Bivens action asserted against them.

## II.   LAW AND ANALYSIS.

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted." In order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 550, 127 S.Ct. 1955, 1965 (2007); see also Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007). The Supreme Court recently expounded on the Twombly standard, explaining that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, – U.S. –, 129 S.Ct. 1937, 1949 (2009). The Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded facts as true. See id., 129 S.Ct. at 1949-50; In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007).

### A.   Absolute Immunity.

Prosecutors are entitled to absolute immunity for actions taken as an officer of the court. See Van de Kamp v. Goldstein, — U.S. —, 129 S.Ct. 855, 859-861 (2009) (citing Imbler v. Pachtman, 424 U.S. 409, (1976)); Brooks v. George County, 84 F.3d 157, 168 (5th Cir. 1996) ("Actions which are related to the judicial process fulfill the prosecutor's advocatory function and are considered absolutely immune from suit"). Withholding exculpatory evidence from the defense, knowingly allowing perjured

testimony, preparing to initiate a judicial proceeding, presenting evidence in support of a search warrant, and even introducing misleading evidence into a proceeding are all activities which fall squarely within the immunity. See id. at 860-61 (citing Imbler, 424 U.S. at 416; Burns v. Reed, 500 U.S. 478 (1991); Kalina v. Fletcher, 522 U.S. 118 (1997)); see also McGruder v. Necaise, 733 F.2d 1146 (1984) ("The decision to initiate, maintain, or dismiss criminal charges is at the core of the prosecutorial function" even if taken with improper motives). The same immunity is not available for other tasks, such as investigative or administrative tasks, simply because they are performed by a prosecutor or prosecuting attorney. See id. The Court has held that giving advice to police during an investigation, acting as a complaining witness in support of a warrant, giving false statements at a press conference, and fabricating physical evidence well in advance of indictment all are unprotected by the absolute prosecutorial immunity. See id. (citing Burns, 500 U.S. at 496; Buckley v. Fitzsimmons, 509 U.S. 259 (2006); Kalina, 522 U.S. at 132).

However, some tasks that appear purely administrative, because of their close relationship to the judicial phase of the process, will nonetheless be covered by the absolute immunity. A prosecutor does not simply take pre-packaged evidence and present it blindly to a jury. See Cook v. Houston Post, 6161 F.2d 791, 793 (1980) (holding that a prosecutor was absolutely immune for actions taken in preparing witnesses and evidence for trial). He must be involved in the preparation of the case. See id. (the prosecutor "would have been negligent in his duties as a prosecutor had he not interviewed witnesses before presenting them to the Grand Jury. His duties as a prosecutor required him to obtain, examine and interpret [evidence]."). And he is

entitled to protection for those actions so long as they are substantively and temporally related to the judicial phase. See id. ("Not all of an advocate's work is done in the courtroom. For a lawyer to properly try a case, he must confer with witnesses, and conduct some of his own factual findings.") (internal quotations marks and citation removed); see also Van de Kamp, 129 S.Ct. at 864 (holding that the immunity applies where the conduct at issue is "intimately associated with the judicial phase of the criminal process.") (internal quotation marks and citation omitted). It is only when he strays from the judicial phase that we remove his absolute immunity and substitute it with the qualified immunity of other federal officials acting under state law.

Buckley involved a prosecutor who, in the midst of an election cycle, solicited numerous experts until he found one that was willing to find a link between a boot print left at a crime scene and the prosecutor's chosen suspect. Eight months of investigation preceded a lengthy grand jury hearing. Ultimately the suspect was indicted, at which time the prosecutor made false statements concerning the suspect and the case to the press. See Buckley, 509 U.S. at 261-64. The question in Buckley was whether at the time of the challenged actions, the prosecutor was acting as an advocate. The Court found important that throughout the process of investigation of the boot print the prosecutors did not "have probable cause to arrest [the suspect] or to initiate judicial proceedings." Id. At 274. This temporal separation made the work of the prosecutor purely investigative or administrative and therefore entitled only to the usual qualified immunity of an officer acting under color of law rather than the absolute immunity of a prosecutor. See id.

In Van de Kamp, a unanimous Court held that a district attorney and his chief

assistant were immune from claims that they had failed to create a system to provide the deputy district attorneys information regarding benefits given in the past to various "jailhouse informants," and to adequately supervise and train deputy district attorneys about the treatment of exculpatory evidence. Id. at 861. The Court explained that administrative obligations that are "directly connected with the conduct of a trial" are afforded the full protection of absolute immunity. By protecting such tasks, the Court "pointed out that it is the interest in protecting the proper functioning of the office rather than the interest in protecting its occupant, that is of primary importance." Id. at 862 (citing Kalina, 522 U.S. at 125). From these two cases, it is clear that both the substantive and temporal relationship between the preparatory work to the commencement of the judicial phase is key to whether the immunity will apply.

Here, Colomb's claims against Grayson can be divided into four categories: (1) fabricating witness testimony through improper use of threats or benefits, (2) improperly providing material facts about the case to potential witnesses, (3) falsifying evidence to maliciously prosecute, and (4) withholding exculpatory evidence. Grayson's alleged failure to provide exculpatory evidence and use of false evidence fall squarely within the scope of absolute immunity. The only actions which this Court need examine are those dealing with the fabrication of witness testimony through improper use of threats or benefits and improperly providing material facts about the case to potential witnesses.

Assuming all facts alleged to be true as this Court must do at this stage of litigation, Grayson either personally or through agents gave details of the case against Colomb to known informants within the jail system and then threatened or incentivized them in such a way as to make their testimony unreliable. All of this took place after the

search which led to the arrest of Colomb and was directly related to the preparation for presenting an indictment of Colomb to a Grand Jury. There is no indication that the relationship between the questioning of the witnesses and the presentation of the evidence is anything but direct.

In fact, the actions of Grayson were after the arrest of Colomb and directly related to the presentation and preparation of evidence for the Grand Jury and trial court. Most of Colomb's claims are unique to the prosecutor's role and depend on the prosecutor's knowledge of how evidence is to be procured and evaluated. Additionally, the concerns present in Buckley are not present here. The prosecutor was not involved in investigating the crime prior to the arrest of Colomb and only began preparation and interviews of potential witnesses once Colomb had already entered the judicial process. All efforts were not made for an eventual or speculative judicial hearing but a definite one set into motion before Grayson ever was involved through the search and arrest. Such actions are squarely within a prosecutor's duties.

Therefore, because his alleged actions were intimately connected with the judicial phase of the criminal process, Grayson is entitled to absolute immunity against any claims based on those actions. The Motion to Dismiss as it pertains to Grayson is **GRANTED**.

### B. Qualified Immunity.

Qualified immunity protects government officials from personal civil damages liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Pasco v. Knoblauch, 2009 WL 1119484 (5th Cir.

2009). More precisely "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Once the government official pleads qualified immunity as an affirmative defense, the burden then shifts to the plaintiff. Michalik v. Hermann, 422 F.3d 252, 262 (5th Cir. 2005). The plaintiff has the burden of establishing that a Constitutional right was violated and that the right was clearly established at the time of the alleged misconduct. Id.

The Fifth Circuit applies "a heightened pleading standard which must be satisfied whenever there is alleged a defense of qualified immunity." Babb v. Dorman, 33 F.3d 472, 477 (5th Cir.1994). This heightened pleading standard requires that "the complaint . . . state with factual detail and particularity the basis for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense of immunity." Id. The law does "not require that an official demonstrate that he did not violate clearly established federal rights; [Fifth Circuit] precedent places that burden upon plaintiffs." Pierce v. Smith, 117 F.3d 866, 872 (5th Cir.1997); see also Wicks v. Mississippi State Employment Services, 41 F.3d 991 (5th Cir.1995) (when faced with a motion to dismiss, the complaint must allege specific facts to negate qualified immunity).

As stated in the Court's order of January 19, 2010, Colomb had not plead her allegations against Stutes with sufficient clarity to allow for a judgment regarding qualified immunity. See Record Document 81 at 2. In light of those scant allegations, Stutes had argued that he was entitled to qualified immunity because Colomb failed to allege that he was either personally involved in the alleged constitutional violations or committed acts causally connected to the alleged violations. See Record Document 72-

1 at 7; see also Woods v. Edwards, 51 F.3d 577, 583 (5th Cir. 1995). Colomb has now filed a Third Amended and Supplemental Complaint alleging, in greater factual detail, that Stutes violated her Fourth, Fifth, and Sixth Amendment rights. See Record Document 84. Stutes did not supplement his Motion to Dismiss in light of the newly detailed factual allegations.

**Fourth Amendment**

Colomb has alleged a violation of her Fourth Amendment right to be free from unreasonable searches and seizures. Specifically, she alleges that "Stutes knew or should have known that the search of her home was founded [on] an affidavit in support of search warrant that had been intentionally falsified in order to deceive the magistrate or judge responsible for issuing the search warrant." Record Document 84 at ¶ 132. In the factual allegations section of her Third Amended and Supplemental Complaint, Colomb lays out certain facts relating to the "falsification of search warrant" and "false arrest." See id. at 4-6. Colomb specifically alleges that defendants Hundley and Herbert obtained a facially invalid search warrant and knowingly and intentionally falsified the information contained in the affidavit in support of the search warrant. See id. at ¶¶ 18, 22. As to Stutes, Colomb alleges that he executed the search warrant knowing that the affidavit in support of the warrant contained false information, thus resulting in the search of her home violating the Fourth Amendment. See id. at ¶¶ 23, 26. The Third Amended and Supplemental Complaint alleged that as a result of the illegal search, cocaine and two guns were seized. See id. at ¶¶ 27-28. "After the discovery of the cocaine and guns, [Colomb] was arrested." Id. at ¶ 29.

With these newly detailed factual allegations, which must be accepted as true,

the Court finds that Colomb has plead the basis of her Fourth Amendment claims of unreasonable searches and seizures against Stutes with sufficient factual detail and particularity to survive a Rule 12(b)(6) attack.  It appears that the qualified immunity analysis relating to Colomb's Fourth Amendment claims is more appropriately addressed in a motion for summary judgment, as opposed to a motion to dismiss.

**Fifth Amendment**

Colomb has alleged violations of her Fifth Amendment rights to due process of law and a fair and unbiased grand jury.  She first contends that Stutes "knowingly and purposefully deprive[d] [her] of the constitutional right to due process of law through the introduction of [her] personal information into the prison system in order to obtain false testimony against [her]."  Record Document 84 at ¶ 104. She further maintains that Stutes knowingly and purposefully deprived her of the constitutional right to due process of law by offering "Rule 35 incentives to jailhouse snitches in return for falsified testimony against [her]."  Id. at ¶ 105.  Colomb also alleges that Stutes purposefully deprived her of the constitutional right to fair and unbiased grand jury proceedings. Specifically, she contends that Stutes knowingly and intentionally falsified his grand jury testimony in an effort to support the perjured testimony of Stevie Charlot.[3]  See id. at ¶ 64.

---

[3]Colomb alleges that multiple defendants, including Stutes, manipulated Stevie Charlot, who was on probation and/or parole at the time of her arrest, by threatening to send him back to jail if he did not cooperate and offer perjured testimony against her. See Record Document 84 at ¶¶ 36-56.

The Due Process Clause of the Fifth Amendment[4] forbids the government from knowingly using, or failing to correct, false testimony. See U.S. v. Mason, 293 F.3d 826, 828 (5th Cir. 2002), citing Giglio v. U.S., 405 U.S. 150, 153, 92 S.Ct. 763 (1972). The Fifth Amendment also guarantees that a grand jury which presents or indicts will be fair and unbiased. See U.S. v. Dionisio, 410 U.S. 1, 16-17, 93 S.Ct. 764 (1973). With these principles in mind and in light of the factual allegations set forth in the Third Amended and Supplemental complaint, which the Court must accept as true at this stage, Colomb has met her burden of demonstrating a violation of clearly established constitutional rights under the Fifth Amendment. As is the case with Colomb's Fourth Amendment claims, the qualified immunity analysis relating to the Fifth Amendment claims will likely be revisited in the context of a motion for summary judgment.

**Sixth Amendment**

Colomb has alleged violations of her Sixth Amendment[5] rights to effective

---

[4]The Fifth Amendment provides:

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence [sic] to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S.C.A. Const. Amend. V.

[5]The Sixth Amendment provides:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously

assistance of counsel and a fair trial. Colomb contends that Stutes' investigatory practices interfered with defense counsel's ability to effectively cross-examine government witnesses. See U.S. v. Crumley, 565 F.2d 945, 949 (5th Cir. 1978) ("The right of cross-examination protected by the Constitution is especially important in exposing a witness' motivation in testifying."). Specifically, she alleged that defense counsel "was unable to show . . . that the witnesses against [her] were fraudulent, tainted and untruthful because . . . Stutes had provided the inmates with [her] information" and that Stutes' actions "created a false reality which [her defense] counsel, no matter how diligent, could not dispel." Record Document 84 at ¶¶ 94-95. At this stage of the proceedings, the Court finds that Colomb has plead a Sixth Amendment claim against Stutes for interference with her right to effective assistance of counsel. Once again, it appears that the qualified immunity analysis relating to this Sixth Amendment claim is more appropriately addressed in a motion for summary judgment, as opposed to a motion to dismiss.

Conversely, the Court does not reach the same conclusion as to the alleged violation of Colomb's Sixth Amendment right to a fair trial. Even after filing her Third Amended and Supplemental Complaint, Colomb has not plead this allegation with sufficient factual particularity and continues to rest on general characterizations. Colomb simply references a "fair trial," but does not clarify the specific Sixth

---

> ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence [sic].

U.S.C.A. Const. Amend. VI

Amendment right allegedly violated. Thus, the motion to dismiss is **GRANTED** on this issue because Colomb has failed to identify a clearly established constitutional right.

### III. CONCLUSION.

**IT IS ORDERED** that the Motion to Dismiss filed by filed by two of the defendants, Brett Grayson and Jerry Stutes, be and is hereby **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** as to Grayson and all of Colomb's Bivens claims against Grayson are **DISMISSED WITH PREJUDICE**. As to Stutes, the motion is **GRANTED** as to Colomb's Bivens claim relating to Stutes' alleged violation of her Sixth Amendment right to a fair trial. Such claim is **DISMISSED WITH PREJUDICE**. The motion is **DENIED** as to Colomb's Bivens claims against Stutes for violation of her Fourth Amendment rights, Fifth Amendment rights, and Sixth Amendment right to effective assistance of counsel.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 18th day of March, 2010.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE