UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| MARY ANN COLOMB | CIVIL ACTION NO. 07-2171 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| BRETT GRAYSON, ET AL. | MAGISTRATE JUDGE HILL |

**MEMORANDUM RULING**

Before the Court is a Motion to Dismiss/Motion for Summary Judgment (Record Document 146) filed by Drug Enforcement Administration Task Force Agent Jerry Stutes ("Stutes"). Defendant Stutes seeks dismissal of the Bivens action asserted against him by Plaintiff, Mary Ann Colomb ("Colomb") pursuant to Rule 12(b)(6) and Rule 56 of the Federal Rules of Civil Procedure Rule. Specifically, Stutes asserts that he is immune from suit and/or entitled to judgment as a matter of law based on the defenses of absolute and qualified immunity. The Plaintiff opposes the Motion to Dismiss. See Record Document 156. For the reasons that follow, Stutes' motion is **GRANTED**.

**BACKGROUND**

On January 31, 2011, this Court issued a Memorandum Ruling and Order granting in part and denying in part Stutes' previous Motion to Dismiss. See Record Document 128 and 129. Pursuant to the aforementioned order, Plaintiff's Fifth and Sixth Amendment claims were found to have been timely filed and therefore properly before the Court. However, due to the limited scope of the previous motion, the Court did not address the merits of the two remaining constitutional claims at that time. Id. Stutes subsequently filed the instant Motion to Dismiss/Motion for Summary Judgment on all remaining Fifth and Sixth Amendment claims asserting the defenses of both absolute and qualified immunity.

See Record Document 146.

Throughout this case, the Court has had numerous occasions to spell out a detailed recitation of the facts surrounding Plaintiff's claims. Accordingly, the Court hereby incorporates the factual background found in its two previous Memorandum Rulings (Record Document 69 and 87) as they pertain to Stutes. It should be noted, however, that at this stage in the litigation the claims have been narrowed. Per the parties' briefs (see Record Document 146 at 1-2 and 156 at 6) in conjunction with this Court's previous rulings (Record Document 128 and 129), there are now only two remaining claims against Stutes: (1) an alleged violation of Plaintiff's Fifth Amendment right to due process of law and a fair and unbiased grand jury; and (2) an alleged violation of Plaintiff's Sixth Amendment right to effective assistance of counsel. See Record Document 156 at 6.[1] See also Record Document 128 at 2 and 11, 105 at 2.

## LAW AND ANALYSIS

### A. Rule 12(b)(6) Standard.

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted." In order to avoid dismissal, the Plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 550, 127 S.Ct. 1955, 1965 (2007); see also Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007). The Supreme Court recently expounded on the Twombly standard, explaining that a complaint must contain sufficient

---

[1] The Court will address Plaintiff's constitutional claims related to a fair trial under the Fifth Amendment's due process clause as laid out in Plaintiff's opposition to the Motion for Summary Judgment, and not under the Sixth Amendment's right to effective assistance of counsel as styled in the Plaintiff's Third Amended Complaint.

factual matter to state a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. at 677, 129 S.Ct. at 1949. The Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded facts as true. See id.; In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007).

### B. Rule 56 Standard

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." [2] Id. (citations omitted). A party asserting that a fact is genuinely disputed must support the assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. Fed. R. Civ. P. 56(c)(1). Furthermore, "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). See also, Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994); Wallace v. Texas Tech Univ., 80 F.3d 1042, 1047 (5th Cir.

---

[2]The Court notes that the amended Rule 56 requires that there be "no genuine *dispute* as to any material fact," but this change does not alter the Court's analysis. F.R.C.P. 56(a) and advisory committee's note (emphasis added). This Court considers this change to be a distinction without a difference.

1996). However, that party "cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." Freeman, 369 F.3d at 860 (citations omitted). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005). Finally, factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Wallace, 80 F.3d at 1048 (quoting Little, 37 F.3d at 1075); see also, S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 494 (5th Cir. 1996). If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the Court is required to render the judgment prayed for. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 331, 106 S. Ct. 2548, 2556 (1986).

## LAW AND ANALYSIS

In light of Rule 56 outlined above and the present Motion to Dismiss/Motion for Summary Judgment filed by Stutes, the Court can narrow the scope of its analysis and need only address whether Plaintiff has demonstrated sufficient evidence in the record showing that there remains a genuine dispute as to: (1) whether Stutes violated Plaintiff's Fifth Amendment rights to due process of law and a fair and unbiased grand jury, or (2) whether Stutes violated Plaintiff's Sixth Amendment right to effective assistance of counsel. See Record Document 156 at at 6, 128 at 2 and 11; 105 at 2. Because Stutes invokes absolute immunity from suit to any claims arising out of his grand jury testimony, the Court will first analyze this issue to determine if any claims should be summarily dismissed without further analysis.

### A. Absolute Immunity

Plaintiff's Fifth Amendment claims include allegations that Stutes purposely deprived her of the constitutional right to due process of law and a fair and unbiased grand jury when he "knowingly and intentionally falsified [his] testimon[y] to the grand jury in an effort to support the perjured testimony of Mr. Stevie Charlot." Record Document 84, Third Amended and Supplemental Complaint, at ¶ 64. In light of the legal doctrine that a grand jury witness has absolute immunity from subsequent civil claims based on the witness' testimony, it is abundantly clear that Stutes is entitled to absolute immunity on any claim arising out of his grand jury testimony in Plaintiff's prior criminal case.

As stated in the Supreme Court's decision in Rehberg v. Paulk, 132 S.Ct. 1497 (2012),

> "grand jury witnesses enjoy the same immunity as witnesses at trial. This means that a grand jury witness has absolute immunity from any § 1983 claim based on the witness's testimony."

Rehberg, 132 S.Ct. at 1506. Furthermore, the Court specifically rejected the argument that there should be a distinction between a lay witness and a police officer during grand jury testimony holding that there is no "reason to distinguish law enforcement witnesses from lay witnesses." Id. at 1505. As reiterated in Rehberg, "A police officer on the witness stand performs the same functions as any other witness." Id. at 1506 (quoting Briscoe v. LaHue, 460 U.S. 325, 342 (1983)).

Rehburg's holding that police officers enjoy absolute immunity from subsequent civil suits attacking a defendant's grand jury testimony is clearly applicable to the case at hand.[3]

---

[3]Colomb has not argued, and this Court does not find any applicable legal distinction between absolute immunity in a Section 1983 claim versus absolute immunity in its federal

Accordingly, relief cannot be granted on this claim. Further, this Court holds that Plaintiff's claims related to Stutes' grand jury testimony also fail under Rule 56 of the Federal Rules of Civil Procedure, as there is no genuine dispute that Stutes testified before a grand jury. Stutes is therefore entitled to absolute immunity as a matter of law in any subsequent civil suit seeking damages related to his grand jury testimony, regardless of the nature of such testimony.

While Plaintiff attempts to make legal arguments that distinguish the present case from that of Rehberg, these arguments not only lack merit, but are dangerously close to being frivolous.[4] It should also be noted that despite accusing Stutes of fundamentally misunderstanding Rehberg, (see Rec. Doc. 156 at 9), it is Plaintiff's counsel, who in fact, fundamentally misunderstands the decision in Rehburg and grossly mischaracterizes its holding. Furthermore, counsel's attempt to classify Stutes' absolute immunity defense as

---

counterpart, a Bivens action. A review of Rehburg demonstrates the Court's concern with subjecting police officers with the continued duty to defend against civil claims based on their grand jury testimony, which ultimately divert their attention from the pressing duty of enforcing the criminal law. See Rehburg, 132 S. Ct. at 1506. While the claims found in the Rehburg case were brought under Section 1983, the Court's holding and rationale was not limited to Section 1983 claims exclusively, but rather all civil suits for damages arising out of grand jury testimony. Here, the Rehburg decision clearly governs the Biven action brought by the Plaintiff in an attempt to get damages based on Stutes' prior grand jury testimony.

[4]Plaintiff's attempts at distinguishing Rehburg, if interpreted as solely pertaining to grand jury testimony, are indeed frivolous. However, the Court will give Plaintiff's counsel the benefit of the doubt and assume that he was combining the issues and was alluding to other allegations beyond the scope of grand jury testimony when drawing a distinction between the cases. Accordingly, this Court's analysis pertaining to absolute immunity will only include the allegations related to Stutes' grand jury testimony, and all the other alleged constitutional violations, including the allegations related to Stutes knowingly allowing another to testify falsely, will be analyzed separately under the qualified immunity doctrine.

"utterly misplaced" and "despicable" is actually a condemnation of the Supreme Court's ruling in which Stutes' defense is based. See Rec. Doc. 170 at 3.[5]

Plaintiff moves this Court to deny Stutes the defense of absolute immunity based on the allegation that Stutes "knowingly" committed perjury. This argument contains obvious fatal flaws. First, the Court is perplexed as to how Plaintiff's counsel can support this argument, as Plaintiff's contention that absolute immunity does not apply to those who "knowingly" commit perjury ignores both the facts of Rehburg,[6] and the legal definition of perjury. Contrary to the briefs filed by Plaintiff, the Supreme Court ruled that the defendant in Rehburg was entitled to absolute immunity despite the serious allegations that he conspired to present false testimony to the grand jury, allegations that are no less serious that those made today against Stutes. Additionally, perjury, by definition, includes the willful intent to provide false testimony and excludes false testimony that occurred as a result of confusion, mistake, or faulty memory. See United States v. Dunnigan, 507 U.S. 87, 94 (1993). While Plaintiff tries to distinguish one who knowingly commits perjury as especially egregious and somehow different from one who commits ordinary perjury (Record Document 170 at 3), the intent to provide false testimony is always present as a element of this offense.

---

[5]Plaintiff's brief included the following argument: "A review of the Supreme Court's opinion in Rehberg, however, shows that the Court never held grand jury witnesses who knowingly commit perjury are absolutely immune from Suit. Defendant Stutes' reliance on Rehberg to argue that he is absolutely immune from suit even if he knowingly commits and/or subordinates perjury is utterly misplaced as it is despicable." Record Document 170 at 3.

[6]In Rehburg, the defendant was alleged to have retaliated against the plaintiff by committing perjury on three separate occasions before a grand jury. Based on the defendants false grand jury testimony, three separate indictments were returned by the jury with charges ranging from aggravated assault and burglary to making harassing phone calls. All three indictments, however, were later dismissed. See generally, Rehburg, 132 S.Ct. 1497.

Second, should the Court analyze the confidential content and subjective knowledge and/or intent of a witness' testimony during grand jury testimony, the very purpose of absolute immunity for grand jury witnesses would be defeated and the legal doctrine would be effectively nullified. In Rehberg, the Court did not weight the type or nature of the false grand jury testimony, but rather reiterated the Eleventh Circuit Court of Appeal's determination that to inquire into the grand jury proceedings would "emasculate the confidential nature of grand jury testimony, and eviscerate the traditional absolute immunity for witness testimony." Rehberg, 132 S. Ct. 1497, 1501 (citations omitted). Accordingly, it would be inappropriate for to consider the content of Stutes' grand jury testimony.

Plaintiff's counsel also relies heavily on his theory that Rehburg's absolute immunity protection does not apply "where a government official is alleged to have engaged in misconducts (sic) under the guise of 'investigative activities.'" Record Document 156 at 9. Counsel cites the following language in Rehburg as support: "We decline to endorse a rule of absolute immunity that is so easily frustrated." Id. (citing Rehberg, 132 S. Ct. at 1507). Counsel's argument related to the phrase "easily frustrated" is an obvious misstatement of the law. The Supreme Court's statement, "[w]e decline to endorse a rule of absolute immunity that is so easily frustrated," stands for the exact opposite of what counsel argues. A simple reading of the entire paragraph containing the above phrase demonstrates that the Supreme Court was specifically holding that the absolute immunity stemming from grand jury testimony ALSO protects investigative and preparatory activities. The Court reasoned that to hold otherwise, would allow a criminal defendant to "simply reframe a claim to attack the preparation instead of the absolutely immune actions themselves." Rehberg, 132 S. Ct. at 1506. As such, Stutes is not only entitled to absolute immunity

against the allegation that he "knowingly and intentionally falsified [his] testimon[y] to the grand jury," but also enjoys absolute immunity for those investigative and preparatory activities directly related to his testimony.

### B. Qualified Immunity

While Stute's is immune from suit with respect to his grand jury testimony and any preparatory activities related to such, Plaintiff also alleges various Fifth and Sixth Amendment violations which, interpreted liberally, may be unrelated to Stutes' grand jury testimony and therefore require analysis under the defense of qualified immunity. See Rehberg, 132 S. Ct. 1497, FN1. It is well settled that qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). See also, Kipps v. Caillier, 197 F.3d 765, 768 (5th Cir. 1999); Morris v. Dearborne, 181 F.3d 657, 665 (5th Cir.1999)). Accordingly, this Court must conduct a "bifurcated analysis to assess whether Stutes is entitled to qualified immunity." Evett v. DETNTFF, 330 F.3d 681, 687 (5th Cir. 2003)(citing Harper v. Harris County, Tex., 21 F.3d 597, 600 (5th Cir. 1994)). "First, the plaintiff must allege the violation of a clearly established right." Id. at 687. Part of the required analysis in this first step is to determine whether the "record shows that the violation occurred, or at least gives rise to a genuine issue of material fact as to whether the defendant actually engaged in the conduct that violated the clearly-established right." Kipps v. Caillier, 197 F.3d at 768 (citing Morris, 181 F.3d 657, 666 (5th Cir. 1999)). Second, if it is determined that the official's conduct was unconstitutional, the court must then decide whether the conduct was nonetheless "objectively reasonable under

the circumstances, such that a reasonably competent officer would not have known his actions violated then-existing clearly established law." Evett, 330 F.3d at 687; see also Kipps, 197 F.3d at 768. "The question of whether an official's conduct was objectively reasonable is a question of law to be decided by the Court." Id.

The Court notes that since Stutes invoked qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense. McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002). Accordingly, Plaintiff cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Rather, she must demonstrated the existence of a genuine dispute as to a material fact by citing to particular parts of materials in the record.

## 1.   Use of False Testimony

It appears that the heart of Plaintiff's Fifth Amendment and Sixth Amendment claims center around, or are related to, the repeated allegations that Stutes knew that Stevie Charlot ("Charlot") was testifying falsely yet failed to stop or correct it. The due process clause of the Fourteenth Amendment clearly forbids the government from knowingly using, or failing to correct, false testimony.[7] United States v. Mason, 293 F.3d 826, 829 (5th Cir. 2002) (citing Giglio v. United States, 405 U.S. 150, 153 (1972); Napue v. Illinois, 360 U.S. 264, 271 (1959)). To prove such a due process violation, the plaintiff must establish that

---

[7]The clauses of the Fifth Amendment (due process rights involving federal actors) and of the Fourteenth Amendment (due process rights with state actors) contain identical language and due process cases arising under the Fourteenth Amendment apply fully to cases arising under the Fifth Amendment. See, e.g., Abreu-Guzman v. Ford, 241 F.3d 69, 73 (1st Cir. 2001) ("The analysis of a qualified immunity defense is identical for actions brought under § 1983 and Bivens."); see also Dusenbery v. United States, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'").

(1) someone testified falsely; (2) the government knew the testimony was false; and (3) the testimony was material. See Mason, 293 F.3d at 828 (citing Giglio, 405 U.S. at 153–54; Knox v. Johnson, 224 F.3d 470, 477 (5th Cir. 2000)).  Here, Plaintiff has failed to establish the second factor.  Plaintiff has provided nothing more than conclusory allegations, unsubstantiated assertions, and wild speculation as to whether Stutes knew at the time of the grand jury testimony and/or trial that Charlot was testifying falsely.

Plaintiff argues that it is clear that Stutes was personally made aware that the so-called drug transaction incriminating the Colomb family never occurred because:

> 1) Stutes "personally spoke with Stevie Charlot on numerous occasions during his alleged investigative conducts (sic) with respect to this case."
>
> and
>
> 2) Charlot has now come forward with an "affidavit" that he was coerced and forced to testify against Colomb.

Record Document 170 at 4.  Plaintiff then assumes that because Stutes spoke with Charlot, Charlot must have informed Stutes that he was about to testify falsely.  There are numerous issues with this logical fallacy of reasoning.  First, even if this Court were to construe the statements made by Charlot as competent summary judgment evidence,[8] Plaintiff has not "connected the dots" and justified the quantum leap between the first claim that Stutes and Charlot spoke and the conclusion that Charlot informed Stutes that he was testifying falsely.  Even Charlot himself has not stated that he informed Stutes about his intention to testify falsely.  See generally, Record Document 156-3.  Further, after the

---

[8]As pointed out by Stutes, there is an issue with whether the declaration made by Charlot (Record Document 156-3) was properly sworn.  See Record Document 161 at 2. However, a ruling is not required on this matter, as permitting the inclusion of this document as proper summary judgment evidence does not change the outcome of this decision.

transcribed statement was given, Charlot consistently testified in open court that he lied in that previous statement. See Record Document 161-1 at 37. Charlot also testified that neither Brian Hudley, Troy Hebert, or any other law enforcement police officer threatened him in an attempt to get him to lie about the Colomb criminal case. Id. at 37-38. In summary, Plaintiff has not provided anything other than pure speculation as to Stutes actual knowledge of the veracity of Charlot's testimony. Accordingly, Stutes is entitled to judgment as a matter of law on all claims which rely on his knowledge that a witness was testifying falsely.

### 2. Use of Unlawful Means to Procure a False Identification

Plaintiff's claims also include various allegations that Stutes knowingly and purposefully violated her constitutional rights by introducing her personal information into the legal system and withholding exculpatory evidence. Record Document 170 at 5-6; see generally Record Document 84, Third Amended Complaint. The Court agrees with Plaintiff's citation to the applicable law that "[a] police officer cannot avail himself of a qualified immunity defense if he procures false identification by unlawful means or deliberately conceals exculpatory evidence, Geter v. Fortenberry, 849 F.2d 1550, 1559 (5th Cir. 1988) (citations omitted). However, to establish this violation, Plaintiff must cite particular parts of the record that support her allegations that Stutes employed unlawful means to procure a false identification or deliberately concealed exculpatory evidence. Plaintiff has made no such showing.

Specifically, Plaintiff claims that "Stutes, did knowingly and purposefully deprive plaintiff of the constitutional right to due process of law through the introduction of plaintiff's personal information into the prison system in order to obtain false testimony." Record

Document 84 at ¶ 104.  The only evidence provided by Plaintiff with respect to this claim is deposition testimony where Stutes himself testified that he asked inmates to look at a photo array of Plaintiff's family members to see if the inmates recognized anyone.  See Record Document 170 at 6 (citing deposition of Jerry Stutes, Record Document 170-1 at 26; lines 16-19; line 22-25; Pg. 27, line 1-2; see also Pg. 28 line 23-25; pg. 29 line 1-3.)  However, Plaintiff has not pointed to evidence in the record suggesting that Stutes acted improperly or suggestive when displaying the photo lineup to potential witnesses incarcerated at the time.  There is simply no link between Stutes actual conduct demonstrated (using the photo lineup), and the unsubstantiated allegations of wrongdoing that Stutes used unlawful means to procure false testimony. There is also no evidence to suggest that Stutes used the photos in order to obtain false testimony.

     Plaintiff has not provided this Court with any legal support backing her contention that the use of a photo array or lineup during an investigation is a violation of ones constitutional rights. It appears to this Court that the use of a photo lineup to help identify potential suspects and prosecute crimes is routine and accepted investigative practice employed by nearly all police departments.  Further, this Court, through its own independent research, is not aware of any law or case holding that the introduction of photos to prison inmates in an attempt to identify or prosecute alleged defendants is *per se* unconstitutional or a violation of the due process clause.  Accordingly, Stutes' use of the photo lineup did not violate a clearly established right and Stutes is entitled to judgment as a matter of law on this claim.

### 3. Offering "Rule 35 incentives"

The Third Amended Complaint also contains allegations that Stutes did knowingly and purposefully deprive Plaintiff of the constitutional right to due process of law through the offering of "Rule 35" incentives to jailhouse snitches in return for falsified testimony against Plaintiff. Record Document 84 at ¶ 105. Plaintiff has utterly failed to provide any evidence to support numerous elements of this allegation. First, Plaintiff has not offered any actual evidence to demonstrate that Stutes himself offered Charlot or any other witness a Rule 35 reduction of sentence in order to secure their testimony. Second, even assuming that Stutes did offer a potential Rule 35 sentence reduction, Plaintiff has failed to point to any evidence supporting her allegation that Stutes offered the Rule 35 incentive in return for false testimony.

Finally, and perhaps misunderstood by Plaintiff's counsel, use of a Rule 35 motion to secure testimony is permitted under federal law.[9] Rule 35 of the Federal Rules of Criminal Procedure gives the government power to seek a reduction of sentence for those who provide substantial assistance in investigating or prosecuting another person. Fed. R. Crim. P. 35(b). Even assuming that Stutes advised Charlot that he could potentially receive a reduction of sentence if he helped in the investigation and/or prosecution of the prior criminal case against Plaintiff, Plaintiff has not provided any law or case establishing that such practice is a violation of her constitutional rights. There is simply no evidence demonstrating that Stutes improperly used Rule 35 to entice Charlot to testify falsely.

---

[9]The Court is aware that use of Rule 35 to secure *knowingly* false testimony would obviously infringe on Plaintiff's rights. However, as previously explained, such is not the case in the present dispute and this clarification paragraph is only a general analysis of Rule 35.

### 4. Depriving Plaintiff of Effective Assistance of Counsel

In yet another claim arising out of the same alleged misconduct, Plaintiff accuses Stutes of knowingly and purposely depriving her of the constitutional right to effective assistance of counsel under the Sixth Amendment. Specifically, Plaintiff alleges that her "criminal trial counsel was unable to show the court that the witnesses against Plaintiff were fraudulent, tainted and untruthful, because Stutes had provided the inmates with Plaintiff's information... and that investigatory practices of Stutes created a false reality which Plaintiff's counsel could not dispel." Record Document 156 at 18. The Court has identified two major shortcomings in this claim.

First, Plaintiff has not cited any case establishing that the right to effective assistance of counsel is related to, or can be linked to an officer's pre-trial investigation. "The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.' " U.S. v. McCullough, 631 F.3d 783, 790 -791 (5th Cir. 2011) (citing Davis v. Alaska, 415 U.S. 308, 315 (1974). This right includes allowing the cross-examiner "to impeach, i.e., discredit, the witness." Id. However, a defendant's Confrontation Clause rights are satisfied when defense counsel is "permitted to expose to the jury the facts from which the jurors ... could appropriately draw inferences relating to the reliability of the witness." United States v. Restivo, 8 F.3d 274, 278 (5th Cir. 1993) (quoting Davis, 415 U.S. at 318). Simply put, Stutes investigation into this case, interview of Charlot, or use of a photo lineup did not prevent Plaintiff's counsel from cross-examining any witness, discrediting their testimony, or exposing facts to a witness.

Second, even if the Court overlooked these legal shortcomings and assumed that Stutes' conduct could potentially violate Plaintiff's right to effective assistance of counsel, Plaintiff has not provided sufficient facts to support the allegations. Plaintiff's counsel attempts to disguise the lack of evidence supporting these allegations by arguing: "put simply, this Court does not need any additional facts to draw the reasonable inference that Stutes is liable for the harm he caused rendering counsel's performance ineffective." However, this Court notes that such argument is an impermissible attempt at getting around the failure to provide facts supporting the allegations of wrongdoing. As explained above, it is clear that there is no evidence in the record demonstrating that Stutes was personally involved in the deprivation or that his personal actions were causally connected to the deprivation. See James v. Texas Collin Co., 535 F.3d 365, 373 (5th Cir. 2008).

> **4. Participating in a Manufactured Case, Withholding Exculpatory Evidence, and other Allegations Falling under the Fifth Amendment.**

Finally, while the briefs related to Stutes' Motion to Dismiss/Motion for Summary Judgment were primarily focused on the various topics discussed above, other somewhat overlapping allegations against Stutes were made in the the Third Amended Complaint. This included allegations such as participating in a manufactured case, withholding exculpatory evidence, and providing jailhouse snitches with the information that was then used by the inmates as the foundation for their "falsified testimonies." See, Record Document 84. Plaintiff's claims against Stutes rest on the admission by Stutes during his deposition that he spoke with/interviewed Charlot and used a photo lineup in an attempt to investigate this case. Plaintiff has not pointed to evidence in the record linking the basic established fact that Stutes participated in the investigation with the conclusion that he must

have violated Plaintiff's rights since photos were circulated in prison and at least one witness may have testified falsely. While it is extremely disturbing to this Court that a witness may have testified falsely, there is simply no evidence connecting Stutes with this type of conduct or establishing that he had knowledge of such.[10]

## CONCLUSION

Based on the foregoing analysis, the Court finds Stutes is entitled to absolute immunity from suit on all claims arising out of his grand jury testimony. The Court also finds that there is no genuine issue of material fact as to whether Stutes actually engaged in conduct that violated a clearly-established right. Plaintiff she has not cited particular parts of materials in the record showing that Stutes engaged in unlawful conduct or violated her constitutional rights. Therefore, Stutes is entitled to judgment as a matter of law and Plaintiff's claims shall be **DISMISSED WITH PREJUDICE**.

Accordingly, **IT IS ORDERED THAT** the foregoing motion (Rec. Doc. 146) be and is hereby **GRANTED**.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 24th day of June, 2013.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE

---

[10] Because Plaintiff has failed to establish a genuine dispute as to whether the Stutes actually engaged in the conduct that violated a clearly-established right, it is unnecessary for the Court to conduct the second part of its bifurcated analysis to determine if the conduct was objectively reasonable under the circumstances.